**Frank KIRBY, Petitioner-Appellant,**

v.

**Michael DUTTON, Warden; and Michael Cody, Attorney General, Respondents-Appellees.**

No. 86–6276.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1987.

Decided Oct. 28, 1987.

Gary L. Anderson (argued), Knoxville, Tenn., for petitioner-appellant.

W.J. Michael Cody, Atty. Gen. of Tennessee, Kathy M. Principe (argued), Nashville, Tenn., for respondents-appellees.

Before LIVELY, Chief Judge, KEITH Circuit Judge, and DOWD\*, District Judge.

KEITH, Circuit Judge.

Petitioner Frank Kirby appeals from the district court's denial of a writ of habeas corpus arising from his 1974 murder conviction in Tennessee. For the reasons set forth below, we AFFIRM the district court's denial of the writ.

## I.

On January 17, 1974, petitioner was convicted in the Criminal Court of White County, Tennessee, of murder and was subsequently sentenced to the state penitentiary. On the same day, petitioner's brother, Noel Kirby ("Noel") was convicted by the same jury of being an accessory to first degree murder. Both convictions were appealed to the Court of Criminal Appeals of Tennessee. On May 14, 1975, the Court of Criminal Appeals affirmed petitioner's conviction and reversed the conviction of Noel. The Tennessee Supreme Court denied petitioner's writ of certiorari on September 29, 1975.

On April 1, 1983, petitioner filed a *pro se* petition for a writ of habeas corpus in the White County Criminal Court. With the aid of appointed counsel, petitioner filed an amended petition for post conviction relief. After an evidentiary hearing, the trial court dismissed the petition on July 12, 1984. On June 4, 1985, the Tennessee Court of Criminal Appeals affirmed the lower court's dismissal of the petition. The Tennessee Supreme Court subsequently denied petitioner's application for permission to appeal.

On May 13, 1986, petitioner filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Tennessee. In his petition, petitioner alleged four grounds for relief. The district court dismissed the petition on October 8, 1986, 673 F.Supp. 1440. On appeal, petitioner raises three of the four issues presented below. Petitioner initially argues that the joint representation of petitioner and his brother at the state trial created a conflict of interest entitling him to habeas corpus relief. Petitioner also argues that prosecutorial misconduct tainted the proceedings and denied him a fair trial. Petitioner finally argues that he was denied the effective assistance of counsel.[1]

The Tennessee Court of Criminal Appeals summarized the relevant facts as follows:

Frank and Noel Kirby are brothers, and Noel Kirby is married to Cheryl Parks Kirby, the daughter of J.C. Parks, deceased, the victim.

In March of 1973 Noel Kirby and his wife, Cheryl Parks Kirby, were having marital difficulties. Noel had possession of Cheryl's Plymouth Duster automobile, which was parked in front of a drive-in restaurant. Noel and Frank Kirby were inside the restaurant and Cheryl was to go to the restaurant and pick up her automobile. Upon arriving at the restaurant in the company of her father, J.C. Parks, she got out of the Parks' automobile, into her own automobile, and began

---

\* Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation.

1. Petitioner also raises an issue concerning the state trial judge's actions in coercing a verdict. However, the issue involved nothing more than a state procedural matter and the state court of appeals found no violation.

to back out of the restaurant parking lot. The defendant Noel Kirby started out of the restaurant to get some of his property which was in the automobile Cheryl was driving, and as he was going out Frank Kirby requested Noel to be sure to get his pistol, a .357 Magnum.

Cheryl gave the defendant Noel Kirby some fishing gear, beer, and the holster and .357 Magnum belonging to Frank Kirby. Noel Kirby gave the fishing gear and beer to Dean Kirby to carry and he started back to the restaurant with Frank Kirby's .357 Magnum pistol. Frank Kirby came out of the restaurant saying, "I'm going to kill him", and took his pistol from Noel Kirby and shot into the automobile in which the deceased J.C. Parks was seated ... [A]s a result of these shots being fired, J.C. Parks was killed. The deceased was shot three times in the back, all of the shots ranging downward.

*Kirby v. Tennessee*, No. 4830 (Tenn. Crim.App. May 13, 1975).

At the post-conviction hearing, petitioner testified that his defense attorneys represented the petitioner, his brother Noel and Don Wightman,[2] who was charged with being an accessory before and after the fact of murder. Petitioner insisted he was never given the opportunity to discuss the details of his testimony with defense counsel prior to trial. He also maintained that his attorneys were more concerned about the plight of Noel.

At the trial, petitioner testified that he shot J.C. Parks in self-defense after hearing a shot and seeing his brother stagger backward and grab his head. He asserted that after he saw J.C. Parks fire his gun toward him, he drew his gun from its holster and fired three times. He claimed that

at no time did he threaten to kill J.C. Parks and at no time did he "grab" or "jerk" the pistol away from Noel.

## II.

Petitioner initially argues that the district court erred in finding that the joint representation of him and his codefendants did not result in an actual conflict of interest.[3] Petitioner specifically argues that the respective differences in the degrees of criminal culpability as to each defendant deprived him of his guaranteed federal right to the assistance of counsel under the sixth amendment to the Constitution.

The federal right to the assistance of counsel is one's right to the effective assistance of competent counsel. *Herring v. Estelle*, 491 F.2d 125 (5th Cir.1974). However, "joint representation by ... counsel does not inherently deprive a defendant of the effective assistance of counsel." *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir.1975) (citations omitted). The mere possibility of a conflict of interest accruing from joint representation is "insufficient to impugn a criminal conviction." *Cuyler v. Sullivan* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest [in his lawyer's representing multiple clients] adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. at 1719. If a petitioner can show that a plausible defense was foreclosed, then he has established an actual conflict. *Foxworth*, 516 F.2d at 1079. Additionally, if the joint defendants' interest diverged with respect to a "material factual or legal issue or to a course of action," then a conflict has been established as well. *Sullivan v. Cuyler*,

---

**2.** Don Wightman was prosecuted in a separate trial. All three defendants were indicted jointly and were represented by the same defense counsel.

**3.** Additionally, petitioner argues under this issue that the district court erred in presuming the correctness of the state court findings of fact. We disagree with this argument. It is well established that findings of fact entered by state courts must be presumed in federal court. 28

U.S.C. § 2254(d); *Loveday v. Davis*, 697 F.2d 135 (6th Cir.1983). In his petition for writ of habeas corpus, petitioner made no claim that any of the eight exceptions listed in § 2254 applied. In his motion for summary judgment, petitioner did assert that some exceptions applied. However, the allegation was made in a general manner; he asserted no facts to support that he could prove the applicability of the exceptions.

723 F.2d 1077, 1086 (3rd Cir.1983) (citation omitted).

Petitioner contends that the dual representation adversely affected his defense because "his interest diverged [sic] substantially from those of Noel Kirby's on very critical factual issues." Petitioner claims that his attorneys engaged in a "shifting of the blame" defense which sought to cast him as the primary perpetrator of the crime. He argues that the attorneys emphasized that petitioner "grabbed" or "jerked" the gun from Noel. He stresses that this had the effect of damaging his claim of self-defense by enhancing his role, while mitigating the role of Noel. While we feel that there existed some conflict of interest in the dual representation of petitioner and his brother (who was charged with a lesser role in the killing),[4] we find that there was no prejudice to petitioner resulting from this conflict. Everyone identified petitioner as the person who killed the victim. Petitioner and his brother, as well as all of the witnesses presented by both the state and the defense agreed that petitioner was the triggerman. Also, everyone agreed that Noel's role consisted of giving the gun to petitioner. Moreover, no evidence was produced which showed that the victim was the aggressor. Thus, the conflict was not fatal to petitioner's case.

In addition, petitioner's only possible defense of self-defense simply had no support in the record. Noel and Don Wightman testified on behalf of petitioner. Both stated that petitioner shot the victim in self-defense. The state court did not accept this defense and factually determined that petitioner announced his intention to kill Mr. Parks and "took his pistol from Noel Kirby and shot." [5] Thus, the conflict of interest was not prejudicial to petitioner's defense.[6]

Petitioner next argues that the prosecutor's inflamatory side bar comments and his questioning of petitioner and other witnesses about petitioner's previous bad acts constituted prosecutorial misconduct in violation of the fourteenth amendment. Petitioner alleges that he was denied a fair trial because of this constitutional violation. We disagree. We note that the prosecutor did indeed overstep the bounds permitted in a criminal trial, and we stress that we do not approve of his conduct. However, a review of the record leads us to conclude that, given the overwhelming evidence of petitioner's guilt and his total failure to substantiate his claim of self-defense, the prosecutor's conduct did not rise to the level of a constitutional violation.

One consideration in determining whether alleged prosecutorial misconduct violates federal constitutional rights is the strength of the competent proof introduced to establish the guilt of the accused. *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976) (citation omitted). In this case, the evidence was uncontradicted that it was

---

4. It would have been in the best interest of Noel, under his defense of noninvolvement in the crime, for the evidence to have shown that petitioner grabbed the gun away from Noel and fired it. It would have been in the best interest of petitioner, who was pleading affirmatively self-defense, for the evidence to have shown that Noel handed him the gun to defend himself. Thus, the dual representation resulted in some conflict of interest.

5. We note that simply because Noel's role consisted of delivering the gun to petitioner does not indicate whether petitioner shot in self-defense. The fact that the words "jerked" or "grabbed" were used in no way concedes that petitioner was not acting in self-defense. In fact, it is just as likely that a person who is in fear of his life would grab or jerk a pistol to defend himself as it is that the gun would be handed to him.

6. Petitioner argues that several "classic indicia[s]" of the conflict of interest were present in this case. For example, petitioner asserts that additional defenses were available to his co-defendant and not available to him. Also, petitioner contends that the conflict of interest necessarily led to a sentencing conflict because of the disparity in the degree of culpability of the co-defendants. We find these arguments to be without merit. It is clear that the only possible defense available to petitioner was self-defense. No other possible defenses appear in the record. Furthermore, the record does not indicate any actual conflict relating to sentencing. The differing degrees of culpability did not present a conflict because the role played by each defendant in the commission of the crime was clear.

petitioner who killed the victim. The only issue concerned petitioner's claim of self-defense. The evidence established that the victim was shot three times in the back. Moreover, witnesses testified that they overheard petitioner threaten to shoot the victim immediately prior to the shooting. Also, as the district court aptly noted:

> The petitioner testified that he acted in good faith apprehension that his victim would shoot him with his (the victim's) gun as the victim stood outside his vehicle. There was other testimony, however, that the victim's gun at all pertinent times was in his daughter's pocketbook, and it has been determined factually that the victim was shot as he was seated in his automobile.

Joint Appendix at 61. On the basis of this overwhelming evidence, petitioner's claim of self-defense was wholly unsupported and the prosecutor's misconduct was not of constitutional proportions.[7]

Petitioner finally argues that he was denied the effective assistance of counsel in violation of the sixth amendment. We disagree.

■ The proper standard for judging attorney performance is that of reasonably effective assistance, considering all of the circumstances. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In *Strickland* the Court further stated that:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the

defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* In reviewing this claim, we should stress that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. at 2065.

Petitioner specifically argues that his attorneys failed to introduce an autopsy report which indicated that only one bullet had entered the victim's body. This report was contrary to the findings of the State of Tennessee that three bullet wounds were present. Our review of the record, however, indicates that petitioner's attorney made a sound strategic decision in deciding not to enter the autopsy report into evidence. The autopsy report had been conducted after the body was buried and had been substantially deteriorated. The State of Tennessee had in its possession certain photographs that indicated that three bullets had entered the victim's body. Petitioner's attorneys knew that if they introduced the autopsy report, the State of Tennessee would counter with the photographs. Thus, counsel's decision was tactical and did not result in their performances being deficient.[8]

---

**7.** Petitioner's reliance on this court's decision in *Walker v. Engle*, 703 F.2d 959, *cert. denied, Marshall v. Walker*, 464 U.S. 951, 104 S.Ct. 367, 78 L.Ed.2d 327 (1983), is unfounded. In *Walker*, we held that the admission of certain evidence in a state court trial denied the habeas petitioner the fundamental fairness guaranteed him by the due process clause. *Walker* is distinguishable, however, from the present case. In *Walk-*

er, the question of petitioner's guilt was open to doubt. In this case, the evidence finding petitioner guilty of the crime is overwhelming. Thus, our holding in *Walker* has no application to this case.

**8.** Petitioner also argues that his attorneys were ineffective because they failed to object to inadmissible evidence and to the action of the trial judge in drastically speeding up the jury deliber-

Accordingly, for the reasons set forth above, we AFFIRM the judgment of Senior Judge C.G. Neese, United States District Court for the Middle District of Tennessee.

ations. Petitioner further argues that counsel failed to properly prepare for trial and did not examine and/or cross-examine certain key witnesses at trial. Upon reviewing the record, we disagree and find that these arguments have no merit.