73 F.3d 362
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nicholas CROWDER, Defendant-Appellant.
 No. 94-1576.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1995.
 
 Before: BOGGS and BATCHELDER, Circuit Judges, and ALDRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Nicholas Crowder appeals his conviction on seven counts, for transporting stolen vehicles across state lines and for conspiring to do so, in violation of 18 U.S.C. Secs. 2312 and 371 (Counts 1-5), for knowingly presenting a false social security card, in violation of 18 U.S.C. Sec. 1028(a)(6) (Count 6), and for conspiring to pass counterfeit money, in violation of 18 U.S.C. Secs. 472 and 371 (Count 7). Crowder also appeals his sentence. We affirm both his conviction and his sentence.
 
 
 2
 * According to the evidence presented at Crowder's trial, from 1990 until his arrest in 1992, Crowder and others stole automobiles, changed their vehicle identification numbers (VINs), produced false titles for the automobiles, and drove them to another state, reregistered them, and obtained new titles. Once clean titles were obtained, they sold the vehicles. Crowder and his associates traveled to Canada, and obtained VIN numbers from Canadian vehicles that matched the descriptions of cars they wanted to steal in the United States. They then returned to the United States, and stole a matching vehicle, sometimes by taking it for a test drive.
 
 
 3
 Thomas Cunningham, who testified for the government, stated that he lived in the basement of a rental house on Troy Street in Oak Park, Michigan, managed by Crowder, and that he handled some of the thefts, while Crowder found buyers for the vehicles. Cunningham testified that after a theft, Crowder would complete false title documents. These documents would be presented to the DMV, along with a false driver's license, in states that had lenient laws "regarding the transactions of the titles" (Cunningham mentioned Virginia, Maryland and Illinois). The automobile would then be registered in that state.
 
 
 4
 Cunningham also testified that he talked with Crowder about counterfeit currency, and saw Crowder with about $45,000 in counterfeit currency. Cunningham testified that Crowder told him that Cunningham could use $15,000 of the $45,000 to see whether merchants would accept the money. Cunningham agreed to repay Crowder fifteen percent of the face value of counterfeit currency he used. Cunningham testified that he had no difficulty passing the currency, and spent about $800 to $1000 in bars, restaurants, and gas stations. Cunningham also testified that he and Crowder went to Tennessee, to visit the currency's printer, and to see whether they could get more currency. Cunningham testified that they spoke with a Mr. Caldwell about obtaining more counterfeit currency. Cunningham testified that Crowder obtained an additional $45,000 in counterfeit money from this trip.
 
 
 5
 Cunningham also stated that, during this trip, he sold a stolen and retitled pickup to Caldwell. Caldwell then wanted yet another vehicle, and in return gave Cunningham his current vehicle. Caldwell agreed that Cunningham would take Caldwell's automobile to Michigan, change the VIN, and resell it, and Caldwell would report that car as stolen to his insurance company. Cunningham testified that he complied, taking Caldwell's car back to the Troy Street house and replacing the VIN.
 
 
 6
 Sometime in 1991, Cunningham was evicted, and Ron Usher, a co-defendant at trial, moved into the basement on Troy Street. Alfred Hofbauer, who rented the main part of the house, testified that he drove Usher to a car dealership once, and that Usher said he planned to test drive a car, and steal the car if the dealership allowed him to take it from the lot alone. Usher told Hofbauer that he was posing as a mechanic for Crowder. Later that day, according to Hofbauer, Usher drove a Pontiac Bonneville SSE to Troy Street, locked it in the garage, and replaced the car's VIN. Hofbauer testified that Crowder asked him on a second occasion to drive Usher to a house, where another SSE was advertised for sale, and that Hofbauer complied. Hofbauer also testified that he found counterfeit money in the Troy Street house, and saw a vehicle that was mentioned in Crowder's indictment at the Troy Street house. Hofbauer recalled that he had visited Crowder's house for a party, and had observed what appeared to be blank identification documents in that house. He had also observed vehicle identification tags and blank insurance certificates at the Troy Street house.
 
 
 7
 On June 25, 1992, police searched Crowder's house in Ferndale, Michigan, and found forged title and identification documents and counterfeit money. At trial, Detective Dankert testified that a variety of blank and filled-in identification materials, and heat lamination equipment were found at Crowder's house.
 
 
 8
 Crowder testified on his own behalf. He stated that he was a dealer in restaurant equipment and an auto broker. Under cross-examination, Crowder testified that he evicted Cunningham from the Troy Street basement because Cunningham was in jail and could not pay the rent. Crowder testified that he was surprised at that time to find counterfeit money in the basement. Crowder denied that he ever came to Troy Street to visit Usher.
 
 
 9
 When apprehended, Crowder possessed an Indiana driver's license for "Mervin Gallop" that featured Crowder's picture, and a social security card for Gallop. Crowder testified that he carried identification indicating his name was Gallop because he knew police were pursuing him, and that a police witness had told him a "sealed warrant" had been issued for his arrest. Crowder testified that he knew he could not be arrested because the warrant had not been unsealed. Crowder denied that he kept any blank social security cards in his house. He also testified that he did not have blank car titles in his house, but then testified that he had a book of blank titles, but that so long as the titles did not have a control number or state seal affixed, they were legal. He then testified that the blank documents really belonged to a Mr. Hemmerling, who had not lived in Crowder's house for several years.
 
 
 10
 Crowder was convicted on June 17, 1993, but he was not sentenced until May 18, 1994. The delay was due to numerous motions by Crowder pro se and by his attorney. On May 18, Crowder was sentenced to serve a total of 71 months incarceration: 60-month concurrent terms for Counts 1-4, and eleven-month concurrent terms on Counts 5-7, to be served consecutively with the 60-month sentence; three years supervised release; and $41,278.93 in restitution.
 
 
 11
 At sentencing, the court calculated a total offense level of 25, and a criminal history category of I.[1] The base offense level under Sec. 2B1.1 for a violation of 18 U.S.C. Sec. 2312 is 4, to which the court added 11 levels because the value of stolen property for which Crowder could be held accountable was in excess of $350,000. USSG Sec. 2B1.1(b)(1)(L). The court added four levels to reflect that Crowder was in the business of receiving and selling stolen property, Sec. 2B1.1(b)(5)(B), four levels for Crowder's role as an organizer and leader, Sec. 3B1.1(a) and two levels for obstruction of justice, Sec. 3C1.1.
 
 II
 
 12
 Crowder argues on appeal that the district court erred by denying his motion to suppress evidence seized during the search of his home. Crowder claims that probable cause to issue the warrant was lacking under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Crowder argues that the affidavit relied on information from Cunningham, but that the affiant failed to mention Cunningham's criminal record and the fact that Cunningham continued to pass counterfeit currency after he became a government informer. Crowder also argues that Cunningham's information was "stale." Crowder acknowledges that Cunningham testified that the government was not aware at the time of the affidavit that he was continuing to participate in counterfeiting activities. The record indicates, however, that the Secret Service had received information about Cunningham's counterfeiting activities in May 1992, and a criminal complaint was sworn against him on June 17, 1992. The affidavit to support the Crowder search warrant was executed on June 24, 1992.
 
 
 13
 "In reviewing a district court's determinations on suppression questions, a district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed de novo." United States v. Pasquarille, 20 F.3d 682, 685 (6th Cir.) (quoting United States v. Thomas, 11 F.3d 620, 627 (6th Cir.1993), cert. denied, 115 S.Ct. 481, 130 L.Ed.2d 394 (1994). However, an issuing magistrate's finding of probable cause for a search warrant is reviewed under a more lenient standard. "It is settled that a state magistrate's determination of probable cause is entitled to 'great deference.' " United States v. Sonagere, 30 F.3d 51, 53 (6th Cir.) (quoting United States v. Leake, 998 F.2d 1359, 1363 (6th Cir.1993)), cert. denied, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994). We review whether, in light of the totality of the circumstances, the magistrate had a "substantial basis" for concluding that a "search would uncover evidence of wrongdoing." Sonagere, 30 F.3d at 53 (quoting Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)).
 
 
 14
 We hold that the district court properly denied Crowder's motion to suppress. The magistrate was well within his discretion in finding probable cause from the information provided in the affidavit. Whether the investigators knew about Cunningham's counterfeiting activities or not, Cunningham's claims were researched by the affiant, Detective Dankert, who found corroborating evidence for Cunningham's assertions. Dankert found that a Florida state trooper had identified Crowder as the person who, under the name of Joseph Bedford, had transported a stolen vehicle to Florida and resold it to an unsuspecting purchaser. Dankert also found that warrants for Crowder's arrest on auto theft charges had been issued in Maryland, Florida, and Tennessee. Furthermore, Detective Dankert declared that Cunningham had been a reliable informant more than 25 previous times. For his part, Crowder has not shown that any of the affiant's allegations were false, and the district court correctly determined that it was within the magistrate's discretion to find probable cause to issue a search warrant.
 
 III
 
 15
 Crowder argues that his attorney's conflict of interest denied him effective assistance of counsel. At various times, Crowder's attorney, Robert Roether, also represented Vicky Comby, Crowder's girlfriend, against state car theft charges, co-defendant James Cundiff on counterfeiting charges, and Greg Blaney, an alleged car theft victim, in a civil action against his insurance company. Crowder claims that, because of this conflict of interest, Roether did not call Blaney or Comby as witnesses, nor did he cross-examine Cundiff. Crowder concludes that we should presume prejudice based on Roether's failure to call these individuals as witnesses.
 
 
 16
 The record indicates that Roether had moved to withdraw as Crowder's counsel before trial, stating that "[t]here exists a virtually total breakdown in communication between Mr. Roether and Mr. Crowder." Crowder responded to this motion by asserting that Roether had foreclosed on his house, and that he believed that Roether was "unbalanced." At the May 5, 1993 withdrawal hearing, however, Crowder claimed that the real problem was with Roether's fee, and that he was willing to continue to work with Roether. As an indication of his respect for Roether, Crowder noted to the court that he had referred people to Roether for over 15 years, including the referrals in the associated cases involving his "wife," (Vicky Comby), his son, and co-defendant Cundiff. The court then denied Roether's motion to withdraw.
 
 
 17
 However, after his conviction, Crowder filed a pro se pleading attacking Roether due to alleged conflicts of interest. During the August 24, 1993 hearing on Crowder's Rule 29 motions and motion for a new trial, Crowder stated that he didn't want Roether representing him anymore, because he believed that Roether had sabotaged his case, in an effort to "set up a defense" for another client.
 
 
 18
 Roether responded that he had disclosed his representation of Cundiff, and withdraw from Cundiff's case when it appeared to conflict with his representation of Crowder. He explained that he did not believe that a conflict existed between the cases of Blaney and Crowder, and that he did not call Blaney as a witness because Blaney had expressed a very negative opinion of Crowder that would not serve Crowder's case. Roether also stated that he withdrew from representing Comby and Blaney.
 
 
 19
 The court determined that there had been a post-conviction breakdown in relations between Roether and Crowder, and granted Roether's oral motion to withdraw from the case at the conclusion of the hearing. The court suspended a ruling on Crowder's motions for acquittal and for a new trial pending retention of new counsel. The court denied Crowder's motions on November 3, 1993.
 
 
 20
 To establish that an attorney's conflict of interest is a deprivation of the right to counsel guaranteed by the Sixth Amendment, a defendant must show an actual conflict that adversely affected his lawyer's performance. Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). Joint representation, absent a showing of actual prejudice, will not demonstrate constitutionally inadequate assistance of counsel. Kirby v. Dutton, 831 F.2d 1280, 1282-83 (6th Cir.1987). Here, it is not clear whether Roether withdrew from his representation of Cundiff, Comby, and Blaney before Crowder's trial. At sentencing, Crowder claimed that Blaney and Comby would be willing to testify that they were represented by Roether during Crowder's trial.
 
 
 21
 Even assuming that Roether jointly represented Comby, Blaney and Cundiff during Crowder's trial, we reject Crowder's argument. Crowder has not shown, as required by existing case law, an actual conflict among the interests of these various clients, nor has he demonstrated that this conflict adversely affected Roether's performance. United States v. Boling, 869 F.2d 965, 971 (6th Cir.1989); Kirby, supra, 831 F.2d at 1282.
 
 IV
 
 22
 Crowder argues that the counterfeiting charge was misjoined with the auto theft charge, and that it was error for the district court to deny his motion to sever the counterfeiting count. Crowder argues that this misjoinder resulted in actual prejudice to him, because it permitted the government to present Cundiff's testimony regarding counterfeiting that corroborated the testimony of Cunningham, thus boosting Cunningham's credibility.
 
 
 23
 We review de novo the failure to grant a severance under Fed.R.Crim.P. 14. United States v. Hatcher, 680 F.2d 438, 440-41 (6th Cir.1982).
 
 
 24
 The government argues that Crowder has waived this argument on appeal, by not renewing the motion at the close of all evidence. United States v. Patrick, 965 F.2d 1390 (6th Cir.), cert. denied, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992); United States v. Swift, 809 F.2d 320 (6th Cir.1987). The court in this case allowed all defense counsel to reserve their Rule 29 and other motions until after the jury returned its verdict. Crowder renewed his challenges in his post-trial motion for a new trial and for judgment of acquittal. The misjoinder claim was not included in this motion. Thus, our review is for plain error, because Crowder failed to renew his motion for severance. Patrick, supra, 965 F.2d at 1400; Swift, supra, 809 F.2d at 323.
 
 
 25
 We find no plain error in the joinder of the auto theft and counterfeiting counts. It does not appear that Crowder suffered prejudice from the joinder that would require severance under Rule 14. With the evidence against him, it is doubtful that Cundiff's corroboration of Cunningham's testimony so affected the jury as to lead them to convict Crowder when otherwise they would have acquitted him. United States v. Wirsing, 719 F.2d 859, 864 (6th Cir.1983).
 
 V
 
 26
 Crowder raises a number of sentencing issues. Crowder first argues that the sentencing court erred in increasing his base offense level by eleven, based on including the value of vehicles not charged in the indictment in determining the amount of loss under Sec. 2B1.1. Crowder also argues that the sentencing court erred by adjusting his base offense level upward by four levels for being a leader of the conspiracy as specified in Sec. 3B1.1, and for being in the business of receiving and concealing stolen property under Sec. 2B1.1(b)(5)(B), and by adding a two-level enhancement for obstructing justice under Sec. 3C1.1.
 
 
 27
 * Crowder argues that the court erred by adding 11 levels to his base offense level by including the value of stolen vehicles not charged in Crowder's indictment as "loss" as provided in Sec. 2B1.1(b)(1). Crowder's argument on appeal is rather brief; to the extent he takes issue with the district court's findings of fact that underlie the application of the Guidelines, we review for clear error. United States v. Smith, 39 F.3d 119, 122 (6th Cir.1994). To the extent Crowder's argument takes issue with the district court's interpretation of the Guidelines, we review that interpretation de novo. United States v. Beckner, 983 F.2d 1380, 1383 (6th Cir.1993). Factual findings that support a sentence enhancement must be proven by a preponderance of the evidence. Smith, supra, 39 F.3d at 122; United States v. Medina, 992 F.2d 573, 592 (6th Cir.), cert. denied, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994).
 
 
 28
 When determining loss under Sec. 2B1.1, the sentencing judge is not limited to the property described in the complaint. A defendant is properly held accountable for other acts "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by" him, Sec. 1B1.3(a)(1)(A) (relevant conduct). In the case of jointly undertaken criminal activity, a defendant is properly held accountable for the "reasonably foreseeable acts of others." USSG Sec. 1B1.3(a)(1)(B).
 
 
 29
 The government provided a list of 24 vehicles for which Crowder was held accountable in sentencing, for a total value of $447,839.14. The government produced Detective Dankert, Detective Sutton, and Secret Service Agent Braun, who testified at the sentencing hearing about the connection between Crowder and each vehicle. This testimony revealed that as to one automobile, a 1983 Oldsmobile Tornado valued at $3000, the government could not produce adequate evidence to link the theft of this vehicle to Crowder. However, as to each of the remaining vehicles, the government's witnesses provided evidence that Crowder either sold the vehicles, produced fraudulent paperwork to retitle the vehicles, or was otherwise linked with the theft of each vehicle by trial testimony. Crowder then testified, and denied that he was involved in the thefts of any of these cars. The court found that the government's information was reliable, and that Crowder's denials were not credible. The court then included the value of these vehicles in the calculation of loss for sentencing purposes and applied an 11-point enhancement.
 
 
 30
 We affirm the district court's enhancement of Crowder's sentence by eleven levels by including the value of these vehicles. The district court reviewed carefully each vehicle named in the Presentence Report before making any factual finding regarding Crowder's connection to these thefts. Even without including the 1983 Oldsmobile Toronado, the total value of these automobiles was well above the $350,000 required in the Guidelines to justify an eleven-level increase. We find that the court properly interpreted the Guidelines, and committed no clear error in its factual findings.
 
 B
 
 31
 Crowder next disputes the court's enhancement of his sentence for his leadership role in the auto theft ring. The sentencing judge's findings of fact determining that a defendant was a leader within the meaning of Sec. 3B1.1 are reviewed for clear error. United States v. Williams, 962 F.2d 1218, 1226 (6th Cir.), cert. denied, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). Under Sec. 3B1.1(a), the offense level is increased by four levels if the defendant was an organizer of a criminal activity that involved five or more participants or was otherwise extensive.
 
 
 32
 Evidence presented at trial indicates that Crowder coordinated a number of people's activities, among them his two sons, Usher, Cunningham, Hofbauer, and Vicky Comby. The court's determination to enhance Crowder's sentence was not erroneous, and we affirm its application of this enhancement.
 
 C
 
 33
 Crowder also appeals his sentence enhancement for being in the business of receiving and selling stolen property. Under Sec. 2B1.1(b)(5)(B), a defendant is "in the business of receiving and selling stolen property" "(1) if stolen property was bought and sold, and (2) if the stolen property transactions encouraged others to commit property crimes." United States v. Warshawsky, 20 F.3d 204, 214-15 (6th Cir.1994). The Guidelines provide a enhancement because the amount of stolen property recovered from "fences" "is likely to underrepresent the scope of their criminality and the extent to which [they] encourage[ ] or facilitate[ ] other crimes." Id. at 215.
 
 
 34
 The evidence produced in Crowder's trial indicated that he regularly arranged for the theft and resale of stolen automobiles. He arranged for others to carry out aspects of the thefts, such as obtaining false identification and reregistering vehicles, or stealing vehicles and retagging them with new VINs. The people who assisted him did not do so out of charity, but were compensated in various ways. Crowder's conduct meets the requirements of Sec. 2B1.1(b)(5)(B). We find that the enhancement is not erroneous.
 
 D
 
 35
 Finally, Crowder contests the enhancement of his sentence for obstruction of justice. A two-level obstruction of justice enhancement is required when the defendant commits perjury at trial. USSG Sec. 3C1.1; United States v. Dunnigan, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The court must, however, "review the evidence and make independent findings necessary to establish" the perjury. Dunnigan, supra, 113 S.Ct. at 1117. The judge must identify with specificity what portions of the defendant's testimony he found to be perjurious. United States v. Spears, 49 F.3d 1136, 1143-44 (6th Cir.1995), and we must have more than an inference to guide us as to what statements the judge found untrue. Id. at 1144.
 
 
 36
 We require that the sentencing court make specific findings to establish that the defendant has willfully impeded justice. Dunnigan, supra, 113 S.Ct. at 1116-17. These factual findings assist us in our review, so that we can ensure that the enhancement is applied only to those defendants who demonstrate willful intent, not those who simply make a claim of innocence, or who provide erroneous testimony due to confusion, mistake, or faulty memory. Dunnigan, supra, 113 S.Ct. at 1117; see also United States v. Clark, 982 F.2d 965, 969 (6th Cir.1993).
 
 
 37
 In this case, the judge carefully considered all of the defendant's testimony, which he had observed in court before him. At the conclusion of the trial, while the jury was deliberating, the judge stated on the record that "on balance the testimony given by Mr. Crowder was some of the most breathtaking perjury I have ever heard in my few years on the bench. It seemed to me in most instances that he was ... making it up as he went along."
 
 
 38
 At the sentencing hearing, after having heard argument on all the sentencing issues, the court stated that "[t]he defendant, in this judge's view, is utterly incredible and seems to me to have almost completely made up his trial testimony." The court further stated, just before assessing the actual sentence, that the defendant's effort, though "delivered with the air of a carnival barker," to state his position as to "why all of this evidence was being made up and why all of it seemed to be coming down on his head ... leads the court to conclude that the defendant's testimony was substantially if not completely perjurious." Nor were the court's findings limited to the conduct at trial. The court similarly stated:
 
 
 39
 ... the defendant repeatedly dodged and bobbed and evaded direct answers until some semblance of a denial was able to be formed in his mind. He talked fast and issued a lot of verbiage, but ended up not saying very much. Certainly nothing credible. Now that's at trial. I have seen a repeat of that here this afternoon.
 
 
 40
 The court also made the necessary findings of materiality. The district court found that Crowder's testimony was "transparently perjurious ... in many very important respects which if it were believed would have conceivably motivated a jury by misdirecting to find reasonable doubt or to acquit the defendant in several specific counts." "The defendant's testimony was shifting, it was devious, it was obfuscating of the other evidence. It was done with, it seems to me, every deliberate attempt to try to mislead the jury and confuse the issue or set of issues that were supposed to be decided." The court did not make explicit findings that particular statements were perjurious, noting that it did not have a trial transcript before it, and so most of the court's comments about Crowder's testimony were general, not exact.
 
 
 41
 In this case, the district court's statements, as a whole, encompassed all the factual predicates necessary for a finding of perjury. The district court sufficiently identified the perjured testimony as being all of the defendant's testimony, and the district court specifically made the necessary finding of materiality. Thus, in cases such as this, where the defendant's testimony appears to be pervasively perjurious, the district court need not recite at sentencing each particular perjurious line, though the better practice would still be to give some examples. The danger that the defendant's sentence is being enhanced simply for taking the stand and denying guilt is absent. From the district court's findings, we can easily determine that Crowder demonstrated "willful intent to provide false testimony." Dunnigan, supra, 113 S.Ct. at 1116. We hold that the court adequately specified its reasons for applying the enhancement under Sec. 3C1.1, and we affirm.
 
 VI
 
 42
 The judgment and sentence of the district court is AFFIRMED in all respects.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," unless use of that manual would violate the ex post facto clause of the Constitution. United States Sentencing Commission, Guidelines Manual, Sec. 1B1.11 (Nov. 1993). The Presentence Report used by the court in this case was prepared following the 1992 Guidelines Manual, effective after November 1, 1992. However, with the delay between conviction and sentencing, the proper Guidelines Manual to follow should have been the 1993 Manual, effective November 1, 1993. The most significant difference for the purposes of this case is that Sec. 2B1.2, the Guideline for sentencing a violation of Sec. 2312, was consolidated into Sec. 2B1.1 effective November 1, 1993. Only the numbering of the provisions changed. For clarity, the new numbers are used throughout this Opinion