85 F.3d 628
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John DOE, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-5567.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1996.
 
 Before: JONES, BOGGS, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Doe pled guilty to engaging in a continuing criminal enterprise to distribute narcotics, in violation of 21 U.S.C. § 848. On July 18, 1990, the district court sentenced him to twenty years in prison, the mandatory minimum under that newly amended statute for a person with no prior narcotics conviction. Doe did not appeal. On August 12, 1991, he filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Doe alleges that the government breached the plea agreement, that the plea agreement was coerced by improper threats to prosecute his father, and that his lawyer was constitutionally ineffective. The district court denied Doe's motion. We affirm.
 
 
 2
 * The government charged Doe with ninety-three counts of various crimes, as part of a multi-defendant indictment on August 16, 1989. Doe's lawyer, Trant, also represented six co-defendants. At arraignment on September 7, 1989, the magistrate judge warned Doe about the hazards of joint representation. The magistrate judge itemized potential conflicts and concluded:
 
 
 3
 [I]f you were convicted and if the case went up on appeal and at some point in time you decided that, hey, this was a mistake, I shouldn't have been represented by this one law firm, this one attorney, the court of appeals may say, yes, that probably was a mistake, but you waived any objection; because, on the morning of September the 7th, 1989, Judge Murrian held a hearing and you stood before him and said that you voluntarily waive or give up your right to have separate counsel and you agree to have joint or dual representation.
 
 
 4
 Doe told the court that he understood his rights, but nevertheless wished to share counsel with his codefendants.
 
 
 5
 Trant met with Doe in early February 1990, to discuss a plea. In a hearing before the magistrate judge, Doe testified that Trant pressured him during this meeting to plead guilty to the continuing criminal enterprise ("CCE") charge. Doe testified that Trant told him that the government would prosecute his elderly father unless Doe pled guilty.[1] Except for Doe's testimony, there is no other evidence in the record that the government threatened to prosecute his father. However, the United States Attorney did admit to having conversations "regarding" Doe's father during preliminary plea negotiations. The magistrate judge found that the government told Trant, and Trant told Doe, that the government might investigate the father's role. At least seven different witnesses heard Trant say, shortly after his meetings with Doe and the government, that Doe had decided to plead guilty to protect his father. Report and Recommendation at 11-14.
 
 
 6
 Doe pled guilty to the CCE count on February 5, 1990. At that time, he stated to the court:
 
 
 7
 THE COURT: Has any person, including any officer or agent of the government, put any pressure on you mentally or physically to force you to plead guilty?
 
 
 8
 [DEFENDANT]: No, sir.
 
 
 9
 THE COURT: Does your plea of guilty to these charges result solely from the fact that you are guilty?
 
 
 10
 [DEFENDANT]: Yes, sir.
 
 
 11
 Doe now claims that he made this representation to the court only because Mr. Trant told him that his father would be arrested if Doe told the court of the government's threat.
 
 
 12
 Doe also testified that, during the same meeting, Trant told him that he would not receive more than ten years in prison. Trant denies that he made such a promise. Trant testified that he told Doe that he probably faced a twenty-year sentence, but that the government might decrease it to as little as ten years if Doe rendered substantial assistance.
 
 
 13
 Under the terms of the plea agreement between Doe and the government, the government dismissed ninety-two other counts. Several paragraphs of the plea agreement are relevant to Doe's current appeal.
 
 
 14
 3. The defendant further agrees to cooperate fully, truthfully and completely with any and all law enforcement agents including but not limited to personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with such law enforcement agents or United States Attorney's personnel whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved.
 
 
 15
 4. The defendant understands and acknowledges that his agreement to cooperate fully, truthfully and completely is an integral part of this agreement and that upon his failing to do so the United States will be free to withdraw from this plea agreement.
 
 
 16
 7. At the time of sentencing the United States agrees to bring to the court's attention the nature, extent, and value of the defendant's cooperation. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case.
 
 
 17
 12. In the event the defendant renders substantial assistance as determined by the United States Attorney and subject to the provisions of Rule 35, Federal Rules of Criminal Procedure, the United States will move for a downward departure from the Sentencing [G]uidelines range.
 
 
 18
 Between his plea and sentencing, Doe met at least three times with the FBI. On each occasion he supplied them with information about drug violations, including photo identifications of alleged violators. According to the government and Trant, Doe told the government on each of these occasions that, although he would supply information, he would not testify against anyone. Doe, on the other hand, says that he only told the FBI that he would not testify against his co-defendants. Appellant's Brief at 11. Doe contends that the government did not need his testimony, anyway. Doe claims that he would have been willing to testify against other drug violators, but the government chose not to use the valuable information that he volunteered.
 
 
 19
 Before the sentencing hearing, the district judge, the Assistant United States Attorney responsible for the case, and Trant and his co-counsel Cunningham, met in the judge's chambers to discuss the extent of Doe's cooperation. A transcript of the meeting was not made. The Assistant United States Attorney, Trant, and Cunningham all testified that the judge was informed of the extent of Doe's cooperation--including Doe's refusal to testify against his codefendants and a number of other people whom he had identified as drug dealers. Doe, who was not there, alleges that the government portrayed his cooperation in a biased way. After the meeting, the government did not move for a departure below the applicable guideline range. At sentencing, Trant did not object to the failure to request a downward departure, or argue that this failure was a breach of the plea agreement. Doe was sentenced to the mandatory minimum: twenty years.
 
 
 20
 After sentencing, Doe has continued to provide limited assistance to law enforcement officials. In September 1990, he supplied thirteen pages of information about drug activity, and represented that he would "both take a polygraph examination regarding it and would testify regarding it." Doe refused, however, to wear a wire on a fellow inmate without a firm ex ante guarantee that his sentence would be reduced. At no point did the government move for a post-sentencing reduction of Doe's sentence for substantial assistance. See Fed.R.Crim.P. 35.
 
 
 21
 Doe filed his § 2255 motion on August 12, 1991. The district court referred the case to a magistrate judge who held an evidentiary hearing on February 22, 1994. Doe's motion alleged that (i) the government breached its plea agreement by not requesting a downward departure; (ii) the plea was involuntary because of the government's threats and Trant's misinformation; and (iii) Trant was constitutionally ineffective. The magistrate judge analyzed each of these claims in a lengthy report. The report stated that the government's failure to request a downward departure could only be policed for constitutionally impermissible motives, such as racial discrimination, under Wade v. United States, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). It found that Doe's plea was indeed voluntary, and that the government did not make an improper threat to prosecute Doe's father. It found that Trant's representation was well within the bounds of acceptable behavior--specifically finding that Trant told the court of the extent of Doe's cooperation during the meeting before the sentencing hearing. Finally, it found that Trant was not constitutionally ineffective when he chose not to argue that the government breached the plea agreement. The report concluded with a recommendation that Doe's motion be denied.
 
 
 22
 Doe filed timely objections to the magistrate judge's report. The district court adopted the magistrate judge's report and recommendation, dismissing Doe's § 2255 motion. Doe filed a timely notice of appeal.
 
 II
 
 23
 A § 2255 motion requires the petitioner to show a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an error inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, --- U.S. ----, ----, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir.) (per curiam), cert. denied, --- U.S. ----, 113 S.Ct. 2424 (1993); United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990). When we review a district court's disposition of a § 2255 motion, we consider de novo any legal conclusion. We accept a fact found by the district court, absent clear error. White v. Smith, 984 F.2d 163, 165 (6th Cir.1993).
 
 
 24
 Doe claims that the government breached the plea agreement by failing to recommend a downward departure. Generally, we do not review the government's failure to recommend a downward departure absent a claim that the prosecution intended to punish the defendant for membership in a protected group or for the exercise of a constitutional right. Wade, 504 U.S. at 185-86, 112 S.Ct. at 1843-44; United States v. Johnson, 46 F.3d 19, 21 (6th Cir.1995); United States v. Bagnoli, 7 F.3d 90, 92 (6th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 95 (1994). Beyond that restriction, the decision is left to the discretion of the government. Ibid. Cf. Futernick v. Sumpter Township, No. 94-1902 (6th Cir. March 1, 1996) (selective enforcement claim requires allegation of intent to punish for group membership or exercise of a constitutional right). The magistrate judge followed this approach in resolving Doe's motion and dismissed it because Doe failed to allege a constitutionally impermissible motive.
 
 
 25
 However, Wade is not controlling when the government signs a plea agreement in which it promises to consider a downward departure. Instead, the government is bound by the terms of the plea agreement. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). If clear terms in the agreement reserve absolute discretion, then the plea agreement itself may incorporate the default rule of Wade. See, e.g., Johnson, 46 F.3d at 20 (agreement that the decision is "solely within the government's discretion"); United States v. Epley, 52 F.3d 571, 580 (6th Cir.1995) (agreement that "[t]he United States retains the complete discretion"). Otherwise, the government is bound to perform any promise--including the promise to consider a departure upon substantial assistance--in good faith. See United States v. White, 71 F.3d 920, 925 (D.C.Cir.1995) (plea agreement with substantial assistance provision requires government to determine substantial assistance in good faith--resulting in more protection than defendant would have under Wade ); United States v. Leonard, 50 F.3d 1152, 1157-58 (2d Cir.1995) (when plea agreement has substantial assistance provision, court may hold an evidentiary hearing to determine whether government acted in bad faith in refusing to make downward departure).
 
 
 26
 The plea agreement in this case says that the government will decide if substantial assistance has been rendered.
 
 
 27
 In the event the defendant renders substantial assistance as determined by the United States Attorney ... the United States will move for a downward departure....
 
 
 28
 This language is not sufficient to erase the general presumption that a party to a contract will behave in good faith. The magistrate judge therefore erred when he examined the government's failure to request a downward departure only under Wade, rather than also inquiring whether Doe could prove bad faith.
 
 
 29
 The magistrate judge's error, however, does not warrant remand. The district court, in adopting the magistrate judge's report, found that the government did not recommend a downward departure "because of [Doe's] refusal to testify." Memorandum and Order, April 7, 1995, at 2. The court's finding of fact, unless we hold that it is clearly erroneous, offers a legitimate justification for the government's action and precludes a finding of bad faith. See Sullivan v. United States, 11 F.3d 573, 575 (6th Cir.1993) (no bad faith where government's stated reasons for refusing to depart downward are "rational and acceptable").
 
 
 30
 Reviewing the court's finding of fact for clear error, we hold that it is adequately supported by the record. The government alleges that Doe refused to testify against people whom he identified. The government also alleges that it warned Doe that he would not get a downward departure unless he reconsidered his obstinate position. Doe testifies to the contrary, but the district court was entitled to believe the government if it found the government more credible. Doe's other evidence of bad faith, troublesome in nature, was found irrelevant by the magistrate judge and by the district court.[2]
 
 III
 
 31
 Doe also claims that his plea was involuntary because the government threatened to prosecute his father. The Supreme Court has specifically reserved judgment on the voluntariness of a plea entered in exchange for a promise by the government not to prosecute a third party. Bordenkircher v. Hayes, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 6094 (1978). Other circuits have held that such a deal is permissible if the government had probable cause to prosecute the third person, but impermissible otherwise. United States v. Pollard, 959 F.2d 1011, 1021 (D.C.Cir.), cert. denied, 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992); Miles v. Dorsey, 61 F.3d 1459, 1468 (10th Cir.1995) (requiring "good faith" ability to prosecute third party); Politte v. United States, 852 F.2d 924, 930 (7th Cir.1988); LoConte v. Dugger, 847 F.2d 745, 752-53 (11th Cir.), cert. denied, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). We believe that this approach is correct. Cf. Bordenkircher, 434 U.S. at 357, 98 S.Ct. at 663 (prosecutor can threaten to add extra counts to a defendant's own indictment at plea negotiations, provided that there is probable cause for those extra counts).
 
 
 32
 The government denies making a specific threat to prosecute Doe's father.[3] The Assistant United States Attorney responsible for Doe's case, Dedrick, did have a conversation regarding Doe's father with Trant. But Dedrick testifies that he told Trant that there was not sufficient evidence to warrant prosecution of Doe's father at that time. Faced with conflicting testimony, the magistrate judge stated:
 
 
 33
 Petitioner and his witnesses testified that petitioner pleaded guilty because of a threat to his father. However, the undersigned finds the testimony of petitioner's attorneys and the prosecutor, and the testimony of the petitioner himself at his guilty plea hearing, to be more credible. Clearly petitioner was concerned for his father and he may have believed that his own guilty plea might avert further investigation into his father's role. That, however, is insufficient to set aside petitioner's guilty plea.
 
 
 34
 Report and Recommendation at 26.
 
 
 35
 Given the facts found by the magistrate judge, the resolution of the issue is correct. When the question of the involvement of Doe's father arose, Dedrick was not required to state unequivocally that there would never be an investigation. His only obligation was to be truthful. Dedrick was aware of evidence that the father delivered money for Doe, although he did not know if the father knew that the money was used to purchase drugs. There is no legal principle that prevents Dedrick from relaying this information to Trant. Nor is there evidence in the record that Dedrick lied about Doe's father's situation.
 
 IV
 
 36
 Doe makes two other claims that we should address briefly. First, Doe argues that Trant's advice to him before he entered his plea was constitutionally ineffective. The district court adopted the magistrate judge's finding that Trant's statements to Doe during the critical meeting--that his father might be investigated and that he might get a downward departure--were appropriately conditional. Furthermore, for a federal court to vacate the plea, Doe must show that, but for Trant's misstatements, "he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The evidence of Doe's guilt was, in the words of Trant, "probably as overwhelming as any I've seen," and the record contains no indication that Doe would have risked trial. Therefore, the court's refusal to vacate Doe's plea was correct.
 
 
 37
 Second, Doe claims that his plea should be vacated because of his attorney's conflict of interest. Doe waived that claim repeatedly in open court, and absent unusual circumstances cannot bring it before this court now. United States v. Straughter, 950 F.2d 1223, 1233 (6th Cir.1991), cert. denied, 112 U.S. 1238 (1992). Furthermore, Doe does not allege a specific conflict of interest. Kirby v. Dutton, 831 F.2d 1280, 1282 (6th Cir.1987). He was the first of the seven jointly represented defendants to plead--and there is no evidence in the record that the other defendants benefited significantly by his decision. The exercise of the (limited) constitutional right to chose joint counsel, see Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988), is not itself prejudicial. Kirby, 831 F.2d at 1282.
 
 V
 
 38
 The judgment of the district court denying Doe's motion to vacate is therefore AFFIRMED.
 
 
 
 [1]
 Doe's father is seventy-six years old and sometimes moved money for Doe. Doe says that his father had no knowledge that Doe used the money to purchase drugs
 
 
 [2]
 Doe's girlfriend decided to testify for the government in the conspiracy proceedings. The government moved her to an FBI safehouse for government witnesses. There, she and one of the FBI investigators began having an affair. The affair lasted from summer to fall of 1989. The same agent was involved in Doe's case, present at the sentencing hearing, and responsible for organizing Doe's post-sentencing cooperation. The affair is disturbing, but not adequate evidence of bad faith. It ended four months before Doe was sentenced, and almost a year before the majority of Doe's post-sentence cooperation. There is no evidence in the record that the FBI agent mischaracterized the extent of Doe's cooperation
 
 
 [3]
 The government does not brief this issue on appeal, and we rely on their pleadings below