974 F.2d 1339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
DeWayne HOPKINS, Defendant-Appellant.
 No. 89-1569.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant DeWayne Hopkins appeals his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Defendant argues that he was denied effective assistance of counsel because of conflicts of interest involving attorneys representing him prior to trial. Defendant also argues that the District Court abused its discretion by providing only two weeks between appointment of the attorney who represented him at trial and the beginning of trial. Defendant further argues that his sentence under the Sentencing Guidelines violates the ex post facto clause of the Constitution because his involvement in the conspiracy ended prior to the effective date of the Guidelines. Finally, defendant argues that failure to record four side-bar conferences in contravention of the Court Reporters Act resulted in prejudice. For the reasons stated below, we REMAND for a determination of whether actual conflicts of interest involving attorneys Isaac and Bremer arose and resulted in prejudice, thus denying defendant effective assistance of counsel. On all other issues, we AFFIRM the judgment of the District Court.
 
 I.
 
 2
 On March 2, 1989, a jury found defendant guilty of conspiracy to distribute cocaine under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. On May 16, 1989, defendant received a sentence of 300 months under the Sentencing Guidelines. Defendant then filed a timely notice of appeal, which was dismissed by this Court on April 19, 1991 for want of prosecution. On March 3, 1992, a motion to reinstate the appeal was granted.
 
 
 3
 Defendant's conviction was based on testimony of his coconspirators and four Flint, Michigan police officers. From 1984 until his indictment in November 1988, defendant was represented by attorney Roger Isaac. Isaac also represented coconspirator Johnny Henderson during that period. Upon defendant's indictment, Isaac stopped representing him but continued to represent Henderson through Henderson's trial and subsequently when Henderson agreed to testify against defendant in return for a lower recommended sentence. From indictment until two weeks before trial, defendant was represented by attorney Daniel Bremer, who also represented coconspirator Annette Gray in her separate trial. Gray, like Henderson, agreed to cooperate with the government to get a lower sentence and was a prosecution witness against defendant. When defendant complained that Bremer was not representing defendant's interest, the District Court appointed new counsel who represented defendant during his trial. Trial was set for, and commenced, two weeks after that appointment. During trial, the District Court failed to ensure recording of four side-bar conferences.
 
 II.
 
 4
 Defendant contends that he was denied effective assistance of counsel under the Sixth Amendment due to conflicts of interest resulting from the two attorneys who represented him at earlier stages of this litigation simultaneously representing two of his coconspirators. An attorney who represents codefendants whose interests are in conflict is denying effective assistance of counsel to a defendant if that conflict affects his performance. Where the conflict is called to the trial court's attention, that court must investigate potential conflicts. Holloway v. Arkansas, 435 U.S. 475 (1978), and Cuyler v. Sullivan, 446 U.S. 335 (1980).
 
 
 5
 When asking that Bremer be replaced, defendant stated that he believed there was a conflict of interest in that Bremer had represented defendant's brother in connection with the same conspiracy, a potential conflict of which he no longer complains. He did not indicate how that representation created any conflict of interest. The matter was not pursued, probably because Bremer was removed as counsel and new counsel was appointed.
 
 
 6
 Defendant asserts that Bremer's representation of coconspirator, Annette Gray, was a conflict of interest and deprived him of effective assistance of counsel. Bremer represented Gray through her trial and continued to represent her after she made a post-trial agreement with the government to testify against defendant in exchange for a favorable sentence recommendation from the government. Defendant contends that this dual representation created two possible ways in which Bremer may have prejudiced defendant, both arising from a supposed desire to increase Gray's value as a witness against defendant and thus improve her bargaining leverage and induce a more favorable agreement with the government. Defendant theorizes that in representing Gray in conjunction with her agreement, Bremer had the incentive to discourage defendant from entering into a plea agreement, thus giving Gray more value as a witness against defendant. In addition, if he coached Gray on how to be the most effective witness against defendant, Bremer had the incentive to reveal to Gray defendant's confidences to Bremer. Similarly, defendant also asserts that his first attorney Roger Isaac's representation of coconspirator Johnny Henderson deprived defendant of effective assistance of counsel by creating a conflict of interest. Isaac represented defendant from 1984 up to his indictment in 1988. Isaac represented Henderson from 1984 through his agreement with the government and through defendant's trial, in which Henderson also was a prosecution witness.
 
 
 7
 Defendant's theories present plausible hypothetical sources of a conflict of interest which could lead to ineffective assistance of counsel. See Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 11.9(d) (1985). This Court is not generally the proper forum in which to raise these issues for the first time, and the appropriate avenue of relief is usually a post-conviction proceeding under 28 U.S.C. § 2255. United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982). In the present case, however, even though the issue was not squarely presented to the District Court, it does appear in the record below. For this reason, we remand to the District Court for a determination of whether actual conflicts of interest involving attorneys Isaac and Bremer arose and resulted in prejudice, thus denying defendant effective assistance of counsel. We also note that in the future, it might be wise not to appoint the same counsel to represent coconspirators, so as to avoid the potential conflicts of this type. When some but not all coconspirators are likely to agree to pleas or to exchange testimony for lower sentence recommendations, conflicts of interest can be as significant as those that exist with inconsistent defenses.
 
 III.
 
 8
 Defendant also contends that the District Court abused its discretion by only providing two weeks between appointment of replacement counsel and beginning trial. Because defendant had ample opportunity to object to this timing and did not even request adjournment, such a claim has been waived. "[T]he failure to first present claims to the district court generally forecloses our consideration of these matters on appeal." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990), citing United States v. Willis, 804 F.2d 961, 964 (6th Cir.1986), and United States v. Polselli, 747 F.2d 356, 357 (6th Cir.1984) (per curiam), cert. denied, 469 U.S. 1196 (1985). Moreover, defendant has not pointed to any deficiency in trial counsel's preparation for trial. Our own review of the record discloses he was well prepared.
 
 IV.
 
 9
 Defendant next contends that because much of his involvement in the conspiracy which formed the basis of his conviction began prior to November 1, 1987, the effective date of the Sentencing Guidelines, his sentence violates the ex post facto clause of the Constitution. This Court has faced precisely this issue before and decided that as long as evidence exists that the defendant's participation in the conspiracy continued after November 1, 1987, sentencing under the guidelines is constitutional. United States v. Walton, 908 F.2d 1289, 1299 (6th Cir.), cert. denied, 111 S.Ct. 532 (1990). In the present case, the jury was asked specifically whether defendant had participated in the conspiracy after November 1, 1987 and found that he had. Testimony of coconspirator Darrell Robertson indicates that he received drugs from defendant in 1988. Although none of his testimony to this effect directly alludes to defendant, Flint Police Lieutenant Jerome Koger testified that he saw members of the conspiracy associating in 1988. As a result, we find no reason to disturb the jury's finding.
 
 V.
 
 10
 Finally, defendant contends that failure of the District Court to ensure recording of four side-bar conferences involving both counsel should result in reversal. Under the Court Reporters Act, 28 U.S.C. § 753, recording of all proceedings in criminal cases is mandatory. United States v. Gallo, 763 F.2d 1504, 1530 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). It is the duty of the court to comply with the Act. Id. Violation of this duty, however, is not per se error and does not without more require reversal. Id., citing United States v. Selva, 559 F.2d 1303 (5th Cir.1977). According to Gallo, the failure to record side-bar discussions is less egregious than failure to record statements made to the jury, and the determination of whether the failure to record results in sufficient hardship or prejudice to require reversal depends on a consideration of "all the circumstances in the record surrounding the omission." 763 F.2d at 1531.
 
 
 11
 In the present case, defendant only argues prejudice in regard to two of the unrecorded side-bar conferences. The first appears to involve discussion of an objection to the relevance of testimony concerning an attempted robbery of the defendant. Testimony given after the District Court apparently overruled defendant's objection strongly suggests that the attempted robbery and defendant's reaction to it were closely related to the drug conspiracy of which defendant was convicted. As a result, it is difficult in this instance to see how defendant could have been prejudiced by the District Court's failure to have the side-bar conference recorded. The second unrecorded side-bar conference to which defendant attributes prejudice involves the apparent sustaining of a defense objection. From his brief, the precise nature of defendant's allegation of prejudice is unclear. Apparently, defendant contends that failure to record the side-bar conference somehow prevents him from successfully seeking reversal based on the District Court's failure to instruct the jury to disregard the question to which defendant successfully objected and to which, as a consequence, no answer was given. It is difficult to envision how defendant could have been prejudiced by this failure to record the side-bar conference, especially since defendant did not object at the time to the failure to give the jury instruction.
 
 VI.
 
 12
 Appellant raises further issues which this Court, having carefully considered in light of the record, briefs, and oral argument, finds without merit. For this reason and for the reasons stated above, we AFFIRM the judgment of the District Court on all issues except that of ineffective assistance of counsel due to conflicts of interest. On that issue, we REMAND to the District Court for a determination of whether actual conflicts of interest involving Isaac and Bremer arose and resulted in prejudice.