**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**DeWayne HOPKINS, Defendant–**
**Appellant.**

**No. 94–1037.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1994.

Decided Jan. 17, 1995.

---

2. The propriety of the presumption created by the Scar Rule is not argued on appeal.

Robert Haviland, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Flint, MI, for plaintiff-appellee.

Miriam L. Siefer (argued and briefed), Federal Public Defenders Office, Detroit, MI, for defendant-appellant.

Before: BROWN, KENNEDY and SILER, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant DeWayne Hopkins was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. He appeals contending he was denied effective assistance of counsel and is thus entitled to a new trial. During a portion of the pretrial proceedings including certain plea negotiations defendant's attorney also represented another client who, convicted of a drug offense, was providing information regarding her knowledge of drug trafficking to the Drug Enforcement Agency ("DEA") in hopes of reducing her sentence. Unbeknownst to defendant's attorney, she provided information regarding defendant to the DEA. The attorney was replaced before trial and before he had knowledge of the conflict. The District Court, after an evidentiary hearing, concluded that defendant was not entitled to a new trial. We affirm.

## I.

On April 15, 1988, Johnny Henderson, Annette Gray, and several other individuals were indicted for conspiracy to distribute cocaine. Attorney Daniel Bremer was appointed by the Court to represent Gray. A jury found Henderson and Gray guilty on August 1, 1988. On November 4, 1988, defendant and others were indicted for conspiracy to distribute cocaine and the District Court appointed Bremer to represent defendant. Bremer was still representing Gray, who was awaiting sentencing.

Bremer encouraged Gray to cooperate with the Drug Enforcement Administration ("DEA") in order to obtain a favorable sentencing recommendation from the government. DEA agent William Dodson interviewed Gray on January 10, 1989; Bremer was not present. At that meeting, Gray revealed that she had lived with defendant and Henderson in 1984 for approximately four to six months and that Gray had delivered cocaine under the direction of defendant fifteen to twenty times.

Dodson prepared a report of his interview with Gray, signing it on January 12, 1989. Dodson sent this report on or after January 12, 1989 to the Assistant United States Attorney ("AUSA") who handled Henderson and Gray's trial, as well as defendant's prosecution. Bremer met with Gray after her interview with Dodson, but Gray did not indicate to Bremer that she had provided incriminating information about defendant.

Defendant appeared for trial on January 17, 1989, at which time he requested a new attorney because he and Bremer had met only once for about thirty minutes. The District Court allowed Bremer to withdraw, and appointed a new attorney, Tim Murphy, to represent defendant. At this time, neither Bremer nor the AUSA had read the DEA report and were unaware that Gray had provided incriminating information about defendant. Prior to defendant's trial, however, the AUSA told Bremer about the report and assured Bremer that Gray's cooperation would be made known to the court in connection with Gray's sentencing. Bremer contends that this is how he first became aware that Gray had an interest adverse to defendant.

Defendant's trial began on January 31, 1989 and Gray testified as a government witness. A jury found defendant guilty on February 2, 1989. Defendant was sentenced to 300 months imprisonment. Defendant appealed his conviction, arguing that he was denied effective assistance of counsel because Bremer encouraged Gray to testify against defendant in order to improve her own position with the government. This Court remanded the case for an evidentiary hearing. *United States v. Hopkins,* No. 89–1569, 1992 WL 209357 (6th Cir. Aug. 28, 1992).

The District Court held the hearing and determined that defendant had demonstrated an actual conflict of interest because Bremer "should have known that Gray knew defendant and would implicate him." The court found, however, that defendant suffered no harm from the conflict because it was very unlikely that defendant would have pled guilty. The court also found that Murphy put on a more than adequate defense at defendant's trial. Defendant now appeals.

## II.

 Where, as here, a claim of ineffective assistance of counsel by reason of a conflict of interest is raised for the first time on appeal, in order to demonstrate a violation of his Sixth Amendment rights, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). If defendant can show that the conflict actually affected his counsel's representation, he need not additionally demonstrate that he suffered prejudice in order to obtain relief. *Id.* at 349–50, 100 S.Ct. at 1719. Whether the facts in a particular case give rise to a conflict of interest is a mixed question of fact and law which we review de novo. *Id.* at 342, 100 S.Ct. at 1715.

Defendant contends that he is entitled to a new trial because Bremer simultaneously represented both him and a witness against him. The District Court found that an actual conflict existed because Bremer encouraged action by one client, Gray, which harmed defendant, another of his clients. The government contends that a finding of a conflict of interest cannot be based on information Bremer did not in fact know.

In order to establish a conflict of interest, defendant must

point to "specific instances in the record to suggest an actual conflict or impairment of [his] interests." ... [Defendant] must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." ... There is no violation where the conflict is "irrelevant or merely hypothetical"; there must be an "actual significant conflict."

*Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987) (citation omitted).

There was no violation in the present case. A conflict is hypothetical where, as here, the attorney does not in fact know of the conflict from the dual representation. Unless the attorney knows of the conflict, he or she cannot make a choice between alternative courses of action depending on which client is to be favored. While defendant has shown that his interests and Gray's interests were inconsistent, Bremer, unaware of that fact, represented defendant in the same manner as if he were not representing Gray. The record shows that Bremer obtained a plea offer for defendant under which defendant was guaranteed the low end of the applicable guideline range in exchange for testifying, if necessary, against other violators. Because Bremer did not know Gray's information about Hopkins, he could not have taken her interests into account in negotiating this plea. Thus, we find no actual conflict in that respect.

Furthermore, defendant was not prejudiced by his attorney's actions. The only conceivable harm to defendant was in connection with plea negotiations since other counsel represented him at trial. Bremer obtained a favorable plea, which defendant rejected. Defendant's failure to accept the plea was unrelated to the dual representation. The AUSA testified that any plea would have required defendant to testify against others and that it was unlikely that defendant would have accepted such a term.

Defendant argues that Bremer's representation of Gray prevented him from making an informed plea decision because he was unaware that Gray's testimony strengthened the government's case. However, Bremer did not know of this testimony and so could not have informed defendant. The government was not required to provide the information during plea negotiations. We agree with the District Court that there is simply nothing in the record which indicates that defendant could have been prejudiced in any way because of Bremer's representation of Gray.

### III.

For the foregoing reasons, we AFFIRM the decision of the District Court.