**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James V. MAYS, Defendant–Appellant.**

**No. 95–5021.**

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 5, 1996.

Decided March 12, 1996.

William F. Campbell, Asst. U.S. Atty. (briefed), Louisville, KY, Kenneth L. Jost (briefed), James E. Arnold (briefed), U.S. Dept. of Justice, Office of Consumer Litigation, Washington, DC, for plaintiff-appellee.

William M. Radigan (briefed), Walker & Radigan, Louisville, KY, for defendant-appellant.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; GILMORE, District Judge.*

---

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. In violation of 18 U.S.C. § 371.

2. In violation of 18 U.S.C. § 1341.

3. In violation of 21 U.S.C. § 331(a).

4. *Id.*

---

KENNEDY, Circuit Judge.

Defendant James V. Mays was convicted by jury of one count of conspiracy to defraud the United States,[1] seven counts of mail fraud,[2] eight counts of interstate shipment of adulterated food,[3] eight counts of interstate shipment of misbranded food,[4] two counts of adulteration of a food,[5] and two counts of misbranding of a food.[6]

Defendant argues that his attorney's actual conflict of interest deprived him of his Sixth Amendment right to effective assistance of counsel and furthermore argues that the District Court's failure to conduct a waiver hearing denied him due process. We disagree and, for the following reasons, **AFFIRM** defendant's convictions.

## I.

Defendant was president and co-owner of Sun Up Foods, Inc., ("Sun Up") a blender and wholesaler of juice concentrate, 98% of which was orange juice concentrate. The government presented persuasive evidence that between 1985 and 1991 Sun Up sold products labeled as 100% pure orange juice concentrate which were in fact knowingly adulterated. Sun Up tried to hide the adulteration by designing production facilities with secret rooms and hidden pipes, by accepting sugar deliveries under cover of night, by falsifying documents, and by tracking current scientific tests for juice adulteration so as to exploit the weaknesses of those tests.

In May of 1992, a federal grand jury returned a 33 count indictment against seven people, including defendant for violations of the Federal Mail Fraud Act and violations of the Federal Food, Drug, and Cosmetic Act. Trial resulted in guilty verdicts for defendant.[7]

---

5. In violation of 21 U.S.C. § 331(k).

6. *Id.*

7. Wife, Patsy Mays and brother, Samuel Mays, were co-defendants at trial. Their appeals were heard separately. *See United States v. Mays,* 69 F.3d 116 (1995).

Defendant was represented by two attorneys in this case, Ronald Hedges, a trial attorney and local counsel, Todd Bolus. At the pre-trial hearing, in late August of 1993, when Hedges filed for leave to appear *pro hac vice*, counsel for the United States apprised the District Court of Hedge's history: Hedges had been charged and convicted of money laundering in Florida, had been disbarred, had served as an informant for the United States government in matters unrelated to the prosecution of Sun Up officials, and had received recommendations from an FBI agent and a U.S. attorney to be reinstated to the bar. Upon admission to the Tennessee bar, in May of 1993, Hedge's relationship with the government ceased.

Defendant argues that, on the basis of Hedges' past interaction with federal law enforcement officials, counsel had an actual conflict of interest and that the District Court failed to make a proper inquiry into the alleged conflict of interest on account of which he was substantially prejudiced and denied due process.

## II.

■■■ In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.[8] *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir.1993)(citing *Cuyler v. Sullivan*, 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333 (1980)). Whether facts give rise to a conflict of interest is a mixed question of fact and law reviewed *de novo*. *United States v. Hopkins*, 43 F.3d 1116, 1118 (6th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2017, 131 L.Ed.2d 1015 (1995). This court specifically has rejected a *per se* rule as to conflicts of interest and requires proof of an

actual conflict. *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir.1993).

> In order to establish a conflict of interest, defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interests. Defendant must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical. There is no violation where the conflict is irrelevant or merely hypothetical; there must be an actual significant conflict.

*United States v. Hopkins*, 43 F.3d at 1119 (citation omitted).

■■■ First, the general facts as alleged by defendant were not evidence of an actual conflict of interest in this case. Attorney Hedge's relationship with federal prosecutors was terminated and unrelated to the prosecution of the Mays. In the numerous cases cited in defendant's brief, a conflict of interest was only found when the relationship between defense counsel and the government was on-going. Here there was no showing of "active representation of competing interests." *Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987).

Furthermore, as we held in *Hopkins*, defendant must show not only a conflict but also that the conflict caused the attorney to make bad choices for his client. In fact, the incidents referred to in defendant's brief of arguably unwise questions by defense counsel of prosecution witnesses appear to have been part of a losing strategy but they were not the result of choices made where there were clearly better alternatives. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)("Judicial scrutiny of counsel's performance must be

---

8. Although *he* raised no objection, defendant points out that counsel for co-defendant did raise the issue before the District Court. Appellant's Reply Brief at 2. Defendant apparently assumes that co-defendants' concerns were the functional equivalent of the defendant objecting, and that therefore, the District Court erred when, in response, he did not afford defendant "an opportunity to show that potential conflicts impermissi-

bly imperil[ed] his right to a fair trial." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). The analogy is unjustified. A lawyer objecting to his own representation of a client, or a client objecting to his own attorney is qualitatively different from a co-defendant objecting to a fellow co-defendant's attorney.

highly deferential"). Counsel appears to have been doing his best against evidence the District Court rightly characterized as "awesome." J.A. at 353.

■ Because the evidence against defendant was so strong, defendant could not be said to have been prejudiced by any of his attorney's actions. *See Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir.)(*en banc*), *petition for cert. filed*, (U.S. Dec. 18, 1995) (No. 95–7279) (applying *Strickland* standard to conflicts of interest outside the context of multiple or serial representation and citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)). To show prejudice, a defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Petitioner had no basis to make such a claim.

■ With regard to defendant's argument that failure to conduct a waiver hearing violates his right to due process, where, as here, there has been no showing of actual or potential conflict of interest, no waiver hearing is required (if counsel has no "conflict," there is no reason to inquire into defendant's preference for "conflict-free" representation). *See Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980)("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."); *United States v. Steele*, 576 F.2d 111, 112 (6th Cir.)(per curiam)(dual representation, without more, does not require waiver hearing), *cert. denied*, 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978).

Because defendant failed to demonstrate that an actual conflict of interest adversely affected his lawyer's performance and because the District Court was not obligated to conduct a waiver hearing under the circumstances of this case, we **AFFIRM** defendant's convictions.