Raymond McNEAL, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 99–1145.

United States Court of Appeals,
Sixth Circuit.

April 11, 2001.

Before KENNEDY and SUHRHEINRICH, Circuit Judges, GAUGHAN,* District Judge.

PER CURIAM.

This is an appeal of the district court's denial of Raymond McNeal's *pro se* petition under 28 U.S.C. § 2255.[1] We AFFIRM.

## I.

Petitioner McNeal was indicted in the Eastern District of Michigan along with several other defendants with narcotics and firearms counts. McNeal was charged with conspiracy to distribute controlled substances (Count 1), possession with intent to distribute cocaine (Count 14), and possession with intent to distribute heroin

---

1. Counsel has been appointed for this appeal.

(Count 34). The Government dismissed Count 14.

The facts are detailed in our prior opinion on the direct appeal and are incorporated by reference here. *See United States v. Jones,* Nos. 95–1608/1627/1631/2129, 1997 WL 441795 (6th Cir. August 7, 1997) (unpublished). On December 24, 1994, a jury convicted McNeal on Counts 1 and 34. On May 10, 1995, the district court sentenced McNeal. He filed a direct appeal, challenging the sufficiency of the evidence as to Count 1, the conspiracy count, but not as to Count 34, the heroin count. This court affirmed McNeal's convictions on August 5, 1997. *See id.*

On August 8, 1998, McNeal filed a § 2255 motion, claiming, for the first time, that a lawyer for a cooperating witness had a conflict of interest; and further alleging that both his trial counsel and appellate counsel were ineffective because they failed to raise this issue. Specifically, McNeal alleged that his attorney on state narcotics charges, Kenneth Scott, met with him while he was a pretrial detainee in the federal action. Scott, however, was representing government witness Jerome Barfield, who was promised leniency at federal sentencing for testifying against McNeal in his federal trial. McNeal also alleged that his trial attorney was aware of the situation, but failed to object, and that his appellate counsel knew it too, but failed to raise the claim on appeal.

Attorney Scott represented Barfield, Petitioner and Leon Holley on state charges related to the instant federal offense. Specifically, the state court matter originated from arrests on Februry 6, 1994, at 3006 W. Dayton. In his federal trial testimony, Barfield incriminated McNeal, Holley, and Earl Jones.

The district court denied the petition. As to the conflict issue, it ruled:

> Petitioner did not raise the question of a conflict of interest at trial, and therefore, in order to show a violation of the Sixth Amendment he must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. . . .
>
> Petitioner has presented no evidence that his trial or appellate counsel had a conflict of interest. Whether attorney Scott had a conflict of interest with petitioner is not the question presented to the court for review. Further, petitioner has not presented any argument or evidence that his alleged meetings with Mr. Scott adversely affected the outcome of his case, much less his lawyers' efforts at trial or on appeal. Accordingly, petitioner has failed to show that his appellate counsel failed to provide him with adequate representation.

The district court issued an order denying a certificate of appealability ("COA"). McNeal moved for reconsideration of this order, which the district court also denied.

On August 26, 1999, this court issued a COA on the following grounds:

> (1) whether McNeal was denied his right to a fair trial because his attorney on state narcotics charges, Kenneth Scott, represented federal prosecution witness Jerome Barfield; (2) whether trial counsel, Gregory T. Gibbs, rendered ineffective assistance by failing to object to Scott's representation of Barfield; and (3) whether appellate counsel, Thomas V. Wilhelm, rendered ineffective assistance by failing to raise these claims on appeal.

McNeal's other issues were denied.

## II.

Under § 2255, a federal prisoner may challenge his conviction on the grounds that "the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was with-

out jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Court has held that a petitioner is only entitled to relief under § 2255 if he shows a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process. See *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884, 121 S.Ct. 200, 148 L.Ed.2d 140 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994).

■ We review de novo the district court's denial of a § 2255 motion, but fact findings are reviewed for clear error. *Riggs*, 209 F.3d at 831. If the district court has not conducted an evidentiary hearing, we will affirm only if " 'the motion and the files and records of the cases conclusively show that the prisoner is entitled to no relief.' " *Id.* (quoting 28 U.S.C. § 2255).

### III.

#### A.

The first issue in this case, as stated in the certificate of appealability, is "whether McNeal was denied his right to a fair trial." We first consider the constitutional sources of the right to a fair trial.

In a long line of cases that includes *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, . . . (1932); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, . . . and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, . . . (1963), this Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the

several provisions of the Sixth Amendment, including the Counsel Clause:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.

*Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citations omitted).

■ The "right to counsel is the right to effective assistance of counsel." *Id.* at 686, 104 S.Ct. 2052 (citation omitted). The guarantee of effective assistance of counsel includes representation which is free of conflicts of interest. *Id.* at 688, 104 S.Ct. 2052. Ineffective assistance of counsel claims based on conflicts of interest are entitled to a limited presumption of prejudice.

In *Cuyler v. Sullivan*, 446 U.S. at 345–350, 100 S.Ct. 1708, . . . the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. More-

over, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see, e.g,* Fed. Rule Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite [a] per se rule of prejudice.... Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan, supra.*

*Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. Further, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708.

▇ To establish an actual conflict, the defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interests. *United States. v. Mays,* 77 F.3d 906, 908 (6th Cir.1996) (citing *United States v. Hopkins,* 43 F.3d 1116, 1119 (6th Cir.1995)). The petitioner must show that the attorney made a choice between possible alternative courses of action such as eliciting (or failing to elicit) evidence helpful to one client but harmful to another. *Id.* If the conflict is irrelevant or merely hypothetical, there is no violation. *Id; see also Kirby v. Dutton,* 831 F.2d 1280, 1282 (6th Cir.1987) (stating that an actual conflict is established where a plausible defense is foreclosed or if the joint defendants' interest diverged with respect to a material factual or legal issue or course of action).

At the same time,

[u]nder the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of a Sixth Amendment guarantee of assistance of counsel. When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude into the State's proper authority to define and apply the standards of professional conduct applicable to those it admits to practice in its courts.

*Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *see also Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 ("Prevailing norms of practices reflected in American Bar Association standards and the like ... are guides to determining what is reasonable [for purposes of evaluating effective assistance of counsel], but they are only guides."); John M. Burkoff, CRIMINAL DEFENSE ETHICS, § 8.1 (1998) ("a criminal defendant's sixth amendment right to effective, conflict-free counsel is not coextensive with a defense attorney's ethical obligation to respond to—and avoid—conflicts").

McNeal does not allege his trial attorney in the federal prosecution, Gregory Gibbs, violated his Sixth Amendment right to effective counsel because he had a conflict of interest. Rather, Petitioner asserts that Scott, his former counsel in the related state proceedings, violated Rule 1.9 of the Michigan Rules of Professional Conduct by representing Barfield in the federal prosecution.[2] McNeal claims that, because of this conflict of interest, he had the right to

**2.** Rule 1.9 of the Michigan Rules of Professional Conduct, which provide in relevant part: Conflict of Interest: Former Client.

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that

prevent Scott from representing the primary witness against him. In support, Petitioner notes that an attorney has an actual conflict of interest when he has previously represented a person who will be called as a witness against a current client at a criminal trial. *See United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir.1996) (per curiam).[3] Petitioner suggests, without support, that the converse—meaning in this case that the attorney has previously represented a defendant against whom his current client will testify against—is also true.[4]

■ Like McNeal, we can find no authority for the proposition that the Sixth Amendment right to counsel (as opposed to the state conflict of interest rule) extends to this situation. *McCutcheon* is distinguishable. In *McCutcheon*, the defendant's *current* counsel had an actual conflict because he had previously represented the codefendant. The codefendant indicated that he had confided certain personal information concerning his background to the attorney, and that he would not waive any privilege attendant to the attorney's prior representation. The codefendant also indicated that he would testify and contradict McCutcheon's entrapment defense, which inculpated the codefendant. The Eleventh Circuit held that the district

court properly disqualified the attorney from representing McCutcheon, because the prior representation created an ethical conflict that would disqualify him from cross-examining the codefendant. *Cf. Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) (holding that an actual conflict of interest impaired the defendant's defense where defense counsel failed to cross-exam a prosecution witness whose testimony linked the defendant with the crime and failed to resist the presentation of arguably inadmissible evidence out of counsel's desire to diminish the jury's perception of a codefendant's guilt).[5]

Here it is undisputed that Gibbs did not have any conflict of interest. In other words, he was not burdened by any ethical obligation to Barfield and was therefore not hampered in his representation of McNeal. Whether Gibbs gave ineffective assistance of counsel in violation of McNeal's Sixth Amendment rights for failing to object to Scott's alleged conflict because of Scott's duty to McNeal is a different question.

■ The question remains whether McNeal's right to a fair trial, as protected by the Fifth Amendment due process right was violated because of Scott's role in the federal trial. In addition to certain specific guarantees[6] not relevant in this case,

---

person's interests are materially adverse to the interests of the former client unless the former client consents after the consultation.

3. In *McCutcheon*, the defendant's attorney had previously represented a codefendant in a prior, unrelated case. The district court disqualified the attorney from representing the defendant in a joint trial with the codefendant because the attorney's prior representation of the codefendant created an ethical conflict that would disqualify him from cross-examining the codefendant in a joint trial.

4. Petitioner acknowledges that he was unable to find any cases to support this position.

5. Further, as the Government points out, Barfield was listed on a different indictment that McNeal. As such, there was no possibility that Scott would be examining McNeal during the federal trial. Nor did McNeal claim at the trial level that he provided any confidences to Scott which would have somehow jeopardized his situation in the charged indictment.

6. A respected treatise notes that, in the criminal context, the right of due process includes six procedural safeguards: "(1) the right to compulsory process of witnesses; (2) a right to pre-trial discovery of evidence; (3) a public hearing; (4) a transcript of the proceedings; (5) a jury trial; (6) a burden of proof on the government greater than a preponderance of

"due process requires that all procedures be fundamentally fair." Ronald D. Rotunda & John E. Nowak, 3 TREATISE ON CONSTITUTIONAL LAW § 17.9, at 120 (3d ed.1999). However, the Supreme Court has stated that "[i]n the field of criminal law, we 'have defined the category of infractions that violate "fundamental fairness" very narrowly' based on the recognition that, '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). In other words, a trial is not fundamentally unfair unless it "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define the community's sense of fair play and decency." *Dowling*, 493 U .S. at 353, 110 S.Ct. 668 (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (other quotations omitted)).

■■■ We simply cannot say that Scott's representation of Barfield in the federal prosecution is fundamentally unfair, because his counsel in the federal proceeding did not have a conflict of interest that hampered his ability to zealously represent McNeal. Moreover, multiple

representation itself[7] is not presumptively prejudicial, an actual conflict must be shown. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (observing that *"Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest"). McNeal has not shown an actual conflict.

*Cuyler* noted that

[s]ince a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.

*Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708. McNeal was not denied an opportunity to show that Scott's representation of Barfield imperiled his right to a fair trial. Indeed, he raised no objection in the trial court. Furthermore, when the conflict issue surfaced at trial, the district court conducted a hearing on codefendant Leon Holley's claim.[8] Although Fed.R.Crim.P. 44(c) requires a district court to take certain measures when two or more defendants are jointly charged and are represented by the same counsel,[9] the district

---

the evidence standard." Ronald D. Rotunda & John E. Nowak, 3 TREATISE ON CONSTITUTIONAL LAW, § 7.8, at 87 (3d ed.1999).

7. In any event, this is not a case of multiple representation, but rather successive representation.

8. The district court conducted an evidentiary hearing after, Daniel Bremer, counsel for codefendant, expressed concern that Barfield might have overheard a conversation between Holley and Scott at Scott's law office.

The district court also conducted a hearing on May 10, 1995, upon defendant Harold

Jones's motion claiming that attorney Scott had represented Jerome Barfield while he had visited him and Sarah Howard (Harold Jones's girlfriend and a codefendant).

9. Fed.R.Crim.P. 44(c) states:

(c) Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation

court was not required to make that inquiry here because there was no joint representation in the federal proceeding. Furthermore, even if the district court were obliged to inquire in this case, "[i]t is clear from the Advisory Committee comments that the failure to comply with Rule 44(c) was not intended to constitute a per se reversible error." Wayne R. LaFave, *et al.*, CRIMINAL PROCEDURE, § 11.9(b), at 672 (2d ed.1999).

## B.

■ Thus, the issue in this case becomes whether Petitioner's trial counsel, Gregory Gibbs, provided ineffective assistance of counsel under the Sixth Amendment by failing to object to Scott's representation of Barfield in the federal action. To demonstrate ineffective assistance of counsel, a defendant must demonstrate both that his counsel's performance was deficient, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694, 104 S.Ct. 2052.

■ Gibbs' failure to object to Scott's representation of Barfield was only deficient performance if McNeal can show that Scott had an actual conflict that adversely affected McNeal's interests in the federal prosecution. To do so, McNeal "must point to specific instances in the record to suggest an actual conflict ... [and] must demonstrate that the attorney made a choice between possible alternative courses of action." *Mays*, 77 F.3d at 908 (quotations omitted). McNeal has not made that showing. Furthermore, even if Gibbs should have objected, such that his performance was deficient. McNeal has not shown any prejudice, as also required by

and shall personally advise each defendant of the right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to

*Strickland.* As the district court held. McNeal failed to show any adverse affect on the outcome of his case. Indeed, McNeal's current counsel concedes "that, if he is required to prove ineffective assistance by the standard in *Strickland,* he cannot meet the burden on this record." Petitioner's Br. at 15. Thus, this claim is without merit.

## C.

Given these conclusions, McNeal's claim that his appellate counsel was ineffective for failing to raise these claims on appeal is without merit.

## III.

In sum, although there may have been an ethics violation here—by Scott—there was no Sixth Amendment because Scott was not McNeal's counsel in the federal action and Gibbs, who was, had no conflict. The only issue then was whether Gibbs provided ineffective assistance of counsel because he did not object to Scott's representation. However, no prejudice has been shown. The judgment of the district court is AFFIRMED.

believe no conflict of interest likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.