NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0247n.06

No. 08-1922

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Apr 21, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JEROME EDWARD BRAY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| JOHN CASON, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

Before:  COOK and McKEAGUE, Circuit Judges; and HOOD, District Judge.[*]

COOK, Circuit Judge.  Petitioner-Appellant Jerome Bray, currently serving a life sentence, appeals the district court's denial of his petition for habeas relief pursuant to 28 U.S.C. § 2254, alleging violations of his Fifth Amendment right against self-incrimination and Sixth Amendment right to effective assistance of counsel.  We affirm the judgment and deny the petition.

I.

After receiving information from jailhouse informant Ned Davis about cocaine dealers in the area, Westland police officers watched the residence at 515 Tobin Street in Inkster, Michigan for three days: February 27, February 28, and March 3, 1997.  On February 27 and 28, the officers observed Bray make frequent, brief stops at the apartment.  On March 3, officers again watched Bray

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

arrive at the apartment and, shortly thereafter, exit carrying a knapsack. This time, the police pursued Bray as he drove away, apprehended him, and found approximately 1,400 grams of crack cocaine and 1,975 grams of powdered cocaine in his car. A later search of the Tobin Street residence produced drugs, drug paraphernalia, and firearms.

Following his arrest, police advised Bray of his constitutional rights and he acknowledged that he understood. Bray then admitted that: he sometimes sold drugs, he intended to sell the drugs found in his car when given instructions to do so, and the guns in the residence belonged to him. He also wrote a statement admitting wrongdoing and expressing the hope that his cooperation with police might lessen his punishment. Though Bray contested the voluntariness of these admissions in the state trial court, an evidentiary hearing convinced the court to deny suppression, finding the statements voluntarily given.

At trial, the defense argued that Bray was in California during the last two weeks of February and that the person the police saw going in and out of the residence on those dates was Bray's cousin, Deon Brown. Bray's aunt, sister, and friend testified to corroborate the story. But though Bray's sister produced documents purporting to show his absence from work during the period in question, prosecution witness Valerie Sovinski, the custodian of records where Bray worked, impeached the sister's testimony. According to Sovinski, the records produced by Bray's sister at trial were not company records. Indeed, the company's records undermined the defense's account, showing that Bray worked during the period in question.

The jury convicted Bray of possessing 650 grams or more of cocaine with intent to deliver, Mich. Comp. Laws §333.7401(2)(a)(i), possessing less than five kilograms of marijuana with intent to deliver, Mich. Comp. Laws §333.7401(2)(d)(iii), and being a felon in possession of a firearm, Mich. Comp. Laws §750.224f. The trial court sentenced Bray to concurrent terms of life imprisonment for the cocaine conviction, two to four years for the marijuana conviction, and two to five years for the firearm conviction. After exhausting his state remedies, Bray sought habeas relief in the district court. The district court held an evidentiary hearing on several of Bray's claims, but denied relief. We granted a certificate of appealability to consider Bray's Fifth and Sixth Amendment claims.

II.

We review the district court's legal determinations de novo and its factual findings for clear error. *Ege v. Yukins*, 485 F.3d 364, 371 (6th Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant a writ of habeas corpus unless the state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). AEDPA confines our inquiry to the last state-court decision on the merits. *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006). We apply AEDPA deference to Bray's Fifth

Amendment claim and to those Sixth Amendment claims the state courts "adjudicated on the merits," while reviewing de novo those ineffectiveness claims the state courts refused to address.[1]

## A.    Admission of Confession

Bray first alleges that the state trial court violated his Fifth Amendment right against self-incrimination when it admitted into evidence his custodial statements to the police, which he contends were involuntarily given in reliance on a promise of leniency. Specifically, Bray argues that the police led him to believe that if he provided a statement and cooperated with police, he might be prosecuted in federal court rather than state court (where he faced a penalty of life imprisonment without the possibility of parole). According to Bray, the inducement of a federal prosecution in return for his statement rendered his confession involuntary.

Bray cites *Bram v. United States*, 168 U.S. 532 (1897), for the proposition that "to be admissible, [a confession] must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Id*. at 542–43 (quotation marks and citation omitted). But *Bram* does not supply the standard for evaluating voluntariness. *Arizona v. Fulminante*, 499 U.S.

---

[1]Bray presented these claims in a pro se motion to supplement his appeal. The district court found the claims "fairly presented" for purposes of AEDPA's exhaustion requirement, 28 U.S.C. § 2254(b)(1)(A), an issue the State does not raise on appeal and that we need not resolve because we deny relief on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

279, 285–86 (1991). Instead, when determining whether police coercion rendered a defendant's statement involuntary, we inquire whether, considering the totality of the circumstances, law enforcement overbore the will of the accused. *Mincey v. Arizona*, 437 U.S. 385, 401–02 (1978). Thus, although police promises of leniency can be objectively coercive in certain circumstances, a statement about possible leniency upon cooperation does not render a confession unconstitutional. *United States v. Craft*, 495 F.3d 259, 263–64 (6th Cir. 2007).

The state trial court held an evidentiary hearing on the admissibility of Bray's statements. At the hearing, Officer Scott Murray—who questioned Bray following his arrest—testified; Bray did not. Citing Murray's testimony that Bray provided a statement before they discussed any potential deal and that Murray informed Bray that only the prosecutor had the power to make a deal, the trial court ruled that Bray gave his statement "voluntarily." The Michigan Court of Appeals likewise found "no evidence" that officers promised Bray leniency in exchange for his statement and upheld the trial court's conclusion that Bray's confession was "the product of free and deliberate choice rather than police coercion." *People v. Bray*, No. 229481, 2003 WL 1387141, *at 3 (Mich. Ct. App. Mar. 18, 2003).

Our review of the record confirms this conclusion. Although Bray cites Officer Murray's wavering testimony regarding whether he contacted the Federal Drug Enforcement Agency on Bray's behalf, he offers no evidence demonstrating coercive police conduct or that his will was overborne. Indeed, Bray's written statement indicated that authorities did not promise him anything for his

answers. Thus, we find that in affirming the trial court's denial of Bray's motion to suppress, the Michigan Court of Appeals did not unreasonably apply clearly established federal law or unreasonably determine the facts.

**B.      Ineffective Assistance**

Bray also catalogues numerous alleged violations of his Sixth Amendment right to the effective assistance of counsel. The two-prong framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing of deficient performance and prejudice, governs our review of these claims.

**Failure to Move to Suppress**

Bray argues that his pre-trial counsel rendered constitutionally ineffective assistance by failing to move to suppress the evidence police seized from the Tobin Street residence. At the federal evidentiary hearing, Bray's lawyer testified that he opted to not file a motion to suppress because he "doubt[ed] [Bray] would have standing" to challenge the search warrant.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Fourth Amendment protections apply when a person possesses a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Bray, who merely cites testimony that he visited the

residence and that documents with his name were found in the residence, fails to demonstrate that he possessed a reasonable expectation of privacy in the place searched and, therefore, cannot prove the merit of his underlying Fourth Amendment claim.

Moreover, even presuming deficient performance and a meritorious Fourth Amendment claim, Bray cannot establish prejudice. Under *Strickland*, Bray must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (1984). Excluding the drugs, drug paraphernalia, and firearms recovered from the apartment, the evidence against Bray remains insurmountable. The officers' testimony that they observed Bray leave the apartment with a knapsack later found to contain over three kilograms of cocaine, in conjunction with Bray's confession, constitute overwhelming evidence of guilt.

**Trial Errors**

Bray offers a litany of alleged errors[2] committed by his trial counsel, including counsel's failure to investigate his sister's testimony and to discern the falsity of the employment records; failure to object to "bad acts" testimony; improper questioning of witnesses; failure to present the defense that the cocaine belonged to Deon Brown; failure to investigate alibi witnesses; and refusal to allow Bray to testify on his own behalf. Even if Bray could demonstrate that his lawyers' performance fell below an objective standard of reasonableness with respect to some—or all—of his

---

[2]The state courts addressed only some of these errors. For ease (and because AEDPA deference is not outcome-determinative), we uniformly apply *Strickland* de novo.

claims, the alleged errors did not prejudice his case. Given the strength of the state's uncontradicted and overwhelming evidence—namely, that Bray possessed three-and-a-half kilograms of cocaine when arrested by police on March 3 and confessed to police that he sold drugs, intended to sell the drugs he possessed when arrested, and owned the firearms in the residence, we remain convinced that any errors made by counsel did not affect the outcome of the trial.

**Conflict of Interest**

Finally, Bray argues that his trial counsel labored under a conflict of interest by representing Ned Davis, the confidential informant, and Deon Brown, his cousin, and that these purported conflicts rendered counsel's assistance ineffective. We apply a slightly-altered *Strickland* test to conflict-of-interest ineffectiveness claims. When an actual conflict exists, we presume prejudice, *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980), but "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 687 (quoting <u>*Cuyler*, 446 U.S. at 348</u>).

<u>Ned Davis</u>

Although the right to counsel encompasses a "correlative right to representation that is free from conflicts of interest," *Wood v. Georgia*, 450 U.S. 261, 271 (1981), a defendant may knowingly, intelligently, and voluntarily waive his right to conflict-free counsel. *United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991). A waiver's validity depends upon the particular facts and

circumstances of a case. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The state appellate court held that Bray waived his right to conflict-free counsel with regard to Ned Davis.

At the beginning of the trial, the prosecutor inquired about a possible conflict of interest implicated by the defense's representation of both Ned Davis and Bray. Specifically, the prosecutor informed the court that, at the pretrial evidentiary hearing on the confession, Bray's current attorneys represented Davis, while a different attorney represented Bray. Counsel for Bray responded that "no conflict affected the adequacy of representation." Defense counsel then continued: "The information that we would seek to obtain from Mr. Davis goes to establishing the police officers' interest, bias and prejudice in this case. It in no way compromises Mr. Davis."

Despite these assurances that no conflict existed, the prosecutor persisted, asking the court to inform Bray of the conflict on the record. This colloquy followed:

> PROSECUTOR: That's why I ask that the Court inquire of the defendant. They don't waive his rights. He's got to get up and the Court's got to inform him there may be a conflict of interest and does he recognize that and does he want to go forward.

> COURT: Mr. Bray, you understand that?

> BRAY: Yes.

> COURT: All right [sic]. You understand that what [the prosecutor] is saying is that because your attorneys also represent or represented Mr. — what's his name again?

-9-

. . .

PROSECUTOR: Ned Davis, Your Honor.

COURT: Mr. Ned Davis; that if they call him as a witness there may be some conflict in their representation of you, that perhaps they may not be looking out for your best interest because they may be looking at the interest of Mr. Davis versus yours. Now, have you discussed this with your lawyers?

BRAY: Yes.

COURT: You think there is a conflict at all? You think that in any way you're being—you would be harmed or you would get less than one hundred percent loyalty from your attorneys on this matter because of that?

BRAY: No, sir.

The colloquy reveals that the court informed Bray of the possibility of a conflict of interest and that he had discussed the matter with counsel. Though the trial judge could have conducted a more thorough inquiry, the state court did not unreasonably hold "that [Bray] was aware of the alleged conflict of interest and that he waived it." *Bray*, 2003 WL 1387141, *at 4.

Moreover, even if we agreed with Bray's argument that the waiver was somehow defective, his claim would still fail. Bray speculates that a conflict of interest prevented defense counsel from calling Davis as a witness, but provides no information substantiating the existence of an actual

conflict by, for example, identifying inconsistent defenses or privileged communications. Bray not only fails to identify an actual conflict, he also fails to show how his lawyers' decision not to call Davis constituted deficient performance. Davis's testimony bore no relevance to the crux of the case against him: his actual possession of three-and-a-half kilograms of cocaine. Bray's inability to show that "an actual conflict of interest adversely affected his lawyer's performance" prevents us from presuming prejudice. Given the overwhelming evidence of guilt against him, Bray cannot satisfy *Strickland*'s prejudice standard without this presumption.

Deon Brown

Bray registers a similar conflict-of-interest claim regarding defense counsel's representation of his cousin, Deon Brown. The State and Bray dispute whether this claim involves concurrent representation, which would trigger a presumption of prejudice, or successive representation, which would not. Because we hold that Bray cannot prevail even with the benefit of the presumption of prejudice, we decline to resolve the issue.

Bray can avoid an analysis of prejudice, which he would lose, only if he demonstrates that an actual conflict of interest adversely affected his representation. *Cuyler*, 446 U.S. at 349–50. In support of his claim, Bray urges us to consider a November 2001 affidavit in which Brown stated that he wished to testify on Bray's behalf, but counsel informed him that it would be "detrimental" to his own case. The magistrate judge correctly found the affidavit inadmissible as hearsay for purposes of evaluating the alleged conflict. Without the affidavit, Bray presents only "hypothetical

conflicts"—conflicts our precedent explicitly rejects. *United States v. Mays*, 77 F.3d 906, 908 (6th

Cir. 1996). Because Bray cannot establish an actual conflict, this claim, too, lacks merit.

III.

We deny Bray's petition.